## MONSON et al. v. HENRY.

Evidence in an action to hold defendants liable on checks **held** insufficient to connect defendant therewith, either as maker, payee, indorser, or indorsee, and to disclose no circumstances showing a liability thereon.

(Opinion filed, July 19, 1910.)

Appeal from Circuit Court, Marshall County. Hon. J. H. McCoy, Judge.

Action by W. A. Monson and another, copartners, against H. E. Henry. Judgment for plaintiffs, and defendant appeals. Reversed, and new trial granted.

*Byron Abbott,* for appellant.

. SMITH, J. This is an appeal from the circuit court of Marshall county. Plaintiff alleges that on· the 20th day of October, 1904, the defendant by his agent, Johnson, purchased of the plaintiff ·52 steers, weighing 51,560 pounds, at an agreed price of $2.60 per hundred; that the defendant caused his agent, Johnson, to give in payment for said steers said Johnson's check in the sum of $50 on the First National Bank of Britton, and his further check for the sum of $1,291.34, payable at said bank; that the defendant agreed to deposit in the name of his agent, Johnson, in said bank, a sufficient amount of money to cover said checks; that the plaintiff received from said bank on account of the payment of said checks the sum of $1,187.34; that thereafter the checks were protested at the request of the bank of Britton, and that, by reason of the nonpayment of the said checks and the cost of protesting ·same, plaintiffs were compelled to pay the sum of $117.87; that the defendant, Henry, received from Johnson, his agent, the 52 steers purchased of plaintiff, and sold the same and received the proceeds thereof. Defendant pleads a general denial. It will be observed from these allegations of the complaint that the plaintiffs seek to hold the defendant liable upon these checks, and founded their action directly for an unpaid portion of the checks themselves. Upon the trial, the plaintiffs offered in evidence the two checks referred to, which were objected to by defendant for the reason "that they have no bearing on the merits of the case, and not in any way tending to bind defendant," which objection was overruled, and defendant excepted, the plaintiff then stating to the court that the connection of the defendant with the checks would be shown later on in the case. At the close of all the evidence, the court directed a verdict in favor of plaintiffs, to which the defendant excepted and this is assigned as error. Whether there was error in this ruling therefore necessarily depends upon whether the evidence offered by the plaintiffs to connect defendant with the checks· was of such character as to show a liability on the part of defendant, upon the checks themselves. This renders necessary a brief examination of the evidence introduced at the trial. Johnson was called as a witness on behalf of plaintiffs, and testified, in substance, that his

business was that of buying and selling cattle; that he knew Monson Bros. and Henry, the defendant; that about the 20th of October, 1904, he bought 75 head of cattle from Monson Bros., 25 head of which belonged to a farmer and the rest to Monson Bros.; that he made the deal for the cattle at about that date and made a payment of $50 on the purchase price; the cattle were delivered on the 22d or 23d of October, and on that date he settled with Monson Bros. by a check, Exhibit 1, for $1,291.34; that prior to buying the cattle he had no conversation with the defendant Henry; that, after purchasing the cattle and paying the $50 on the purchase price, he telephoned Henry, who was then in North Dakota, telling him he had bought the cattle, and asked him to protect this check for $1,291.34; that he told Henry about the checks, and the conditions upon which he bought the cattle, and Henry said it was all right; that the cattle were delivered to him at the time he gave the check for $1,291.34, and he drove the cattle to Britton, where they were turned over to and shipped by Mr. Henry; that Henry never paid him anything for the cattle, and he never received any of the proceeds obtained from their sale; that he asked Mr. Henry to order the cars and get ready for the cattle, and that Henry said he would order the cars that night; that, if any amount was paid on these checks, the defendant Henry paid it, and it was not paid out of witness' fund at the bank. On cross-examination witness stated that at the time he telephoned Henry he asked him to take care of "my check;" that, when he bought the cattle, he bought for Mr. Henry; that, when he gave the check for $50, he was buying for himself; that the check (Exhibit 1) was not paid because the Monsons did not deliver the cattle according to the agreement; that all the proceeds from the cattle went to pay the Monsons, and he did not receive any of it; that Mr. Henry and himself both instructed the cashier of the bank not to pay the check; that, when he purchased the cattle of Monson, he exepected to turn them over to Mr. Henry; that he had bought cattle for Mr. Henry both before and after this time, and had acted as Mr. Henry's agent in buying cattle; that he did not have enough money in the bank to meet these checks, and expected Mr. Henry to take care of them.

The defendant, Henry, testified that he was acquainted with Johnson and the Monsons; that on the 20th of October, 1904, Johnson called him up and had a conversation with him over the phone, in which Johnson stated he had bought three car loads of cattle from the Monsons, and wanted to know if he would protect the checks; that he asked Johnson how the cattle were bought, and that Johnson told him; that he asked him if he did not think that they were pretty high, and Johnson told him he had got a pretty good shrink on them; that they were to be yarded at night and sent to McDougall's ranch and weighed without feed or water, and the witness said, if the cattle were bought that way, they were all right, and that he would help him out in the matter; that Johnson asked the witness if he would see to ordering the cars and that the witness did order the cars in which to ship the cattle; that the shipment was made in his name, because he had agreed to look after Johnson's checks; that the entire proceeds of this bunch of cattle less $50 was applied on the check (Exhibit 1), being the check for $1,291.34; that at the time Johnson purchased the cattle there were no business relations existing between himself and Johnson; that he had had no conversation with Johnson prior to the purchase of the cattle, and that Johnson was not working for him at that time.

Upon the trial, one Phelps was called as a witness on behalf of plaintiff to testify to certain conversations with the defendant, Henry, in which Henry was alleged to have admitted his liability upon these checks. The defendant, Henry, in his evidence absolutely denied the statements of Phelps as to these admissions. The evidence, thus briefly summarized, is the only evidence in the record tending to connect the defendant, Henry, with the check upon which this action was founded, and the only question before us upon this record is whether the court erred in receiving in evidence (Exhibit 1) the check sued upon, and whether such check under the circumstances disclosed in this record became in any manner binding upon the defendant. The defendant was neither maker, payee, indorser, or indorsee of this check, and the evidence wholly fails to establish the allegations of the complaint that the defendant agreed to deposit money in the name of his

agent, Johnson, in the First National Bank of Britton to honor said checks.

It appears to us that the trial court must have proceeded upon the theory that the real question presented for determination was whether the defendant, Henry, was liable to the Monsons for an unpaid portion of the purchase money of the cattle. If this were the real question, we should not be prepared to say that the direction of the verdict for plaintiff at the close of all the evidence was erroneous, for the reason that the testimoney of the witness Johnson and of the defendant Henry, himself, is of such nature as that the court or jury might be justified in reaching a conclusion that the cattle were in fact bought by Johnson as the agent of the defendant Henry, and that there remained an unpaid portion of the purchase price. But this is not the real question arising under the assignment of error. The vital question is whether this testimony is of such character as to connect the defendant with the check and render him liable upon the same, and discloses such circumstances as would show a liability upon this written instrument or check itself. We are constrained to believe that no such liability is shown by this evidence, and that the court erred in directing a verdict for plaintiff. Upon this ruling alone we are of opinion that a new trial should be awarded the defendant.

McCOY, J., took no part in this decision.